Filed 6/30/14  Namo Co. v. Peerless Ins. Co. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NAMO COMPANY, LLC,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>PEERLESS INSURANCE COMPANY,<br><br>      Defendant and Respondent. | A132370<br><br>(Sonoma County<br>Super. Ct. No. SCV 243811) |

A commercial landlord was in the process of replacing a roof when a rainstorm caused damage to tenant improvements contained within the leased premises.  The tenants' insurer paid the tenants for the damage to the tenant improvements.  After the tenants failed to repair or replace the damaged improvements, the landlord submitted a property claim to its own insurer for the cost of repairing the tenant improvements.  The landlord's insurer denied the claim on the ground the landlord lacked an insurable interest in the tenant improvements as of the date they were damaged.

The tenants also sued the landlord for damages the tenants incurred following the rainstorm.  The tenants' insurer provided a defense and indemnity to the landlord, which was an additional insured under the tenants' policy.  Following a settlement of the tenants' lawsuit, the tenants' insurer assigned its contribution and indemnity rights against the landlord's insurer to the landlord.

In this action against the landlord's insurer, the landlord claims (1) the damages to the tenant improvements are covered under the landlord's policy, and (2) it is entitled to

1

equitable indemnity from the landlord's insurer on the claim assigned to it by the tenants' insurer. The trial court granted summary judgment in favor of the landlord's insurer.

We agree with the trial court that the damages to the tenant improvements are not covered under the landlord's policy in light of the fact that the tenants' insurer fully compensated the tenants for the loss. However, we disagree with the trial court's conclusion concerning the equitable indemnity claim, which turns on whether the claims asserted by the tenants against the landlord are covered under the tenants' policy. Because we conclude the claims against the landlord are not covered under the tenants' policy, the landlord's insurer is not entitled to summary adjudication on the equitable indemnity claim. However, because we also conclude that there is a triable issue of material fact as to whether the landlord, as assignee of the tenants' insurer, is equitably estopped from seeking contribution or indemnity from the landlord's insurer, the landlord is also not entitled to summary adjudication on its claim for equitable indemnity. Accordingly, we reverse in part and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

*The Leases*

Pursuant to a June 1997 lease, as amended by an August 2002 addendum, and a March 2003 lease (collectively, the leases), three tenants (the tenants) leased approximately half of a commercial building located in Rohnert Park. The tenants operated a children's amusement center, a restaurant, and a bar in the leased space. In April 2006, plaintiff and appellant Namo Company, LLC (Namo) purchased the property and acquired the prior owner's rights under the leases.

At the inception of the tenants' first lease in 1993, the portion of the building the tenants occupied was an empty shell with a demising wall. The tenants installed all of the tenant improvements at their own expense before Namo acquired the building in 2006. The tenant improvements included flooring, insulation, interior walls, cabinets, plumbing, lighting, heating and ventilation apparatus, and electrical wiring and fixtures, among other improvements.

2

The leases specified that the tenants had the responsibility to construct certain tenant improvements, referred to as "Alterations and/or Utility Installations." All such tenant improvements were the property of the tenants and did not become the property of Namo, the lessor, until the expiration or termination of the leases. The tenants were required to deliver the "Alterations" and "Utility Installations" to Namo in good condition at the expiration or termination of the leases. However, at the conclusion of the leases the tenants were required to remove any "Trade Fixtures," which remained the property of the tenants.[1] We refer to the "Alterations" and "Utility Installations," but not the "Trade Fixtures," as the tenant improvements.

The tenants were required under the leases to maintain property insurance covering all of their personal property, Trade Fixtures, and tenant improvements. Namo was not required to maintain property insurance covering the tenant improvements. Pursuant to the leases, the tenants and Namo waived their subrogation rights against each other for damages to the building and the tenant improvements. Namo was not liable under the leases for any injury or damage to the tenant improvements.

The leases obligated the tenants to maintain liability insurance for Namo's benefit. As set forth in the leases, the tenants were required to obtain and to keep in force a commercial general liability policy of insurance protecting the tenants and Namo, as an additional insured, against claims for bodily injury, personal injury, and property damage arising out of the "ownership, use, occupancy or maintenance of the Premises and all areas appurtenant thereto." The leases specified that this insurance "shall be primary to and not contributory with any similar insurance carried by [Namo], whose insurance shall be considered excess insurance only."

---

[1]As defined in the leases, "Utility Installations" means "all lines, power panels, electrical distribution, security, fire protection systems, communication systems, lighting fixtures, heating, ventilating and air conditioning equipment, plumbing, and fencing in, on or about the Premises." "Alterations" is defined as "any modification of the Improvements on the Premises which are provided by the Lessor under the terms of the Lease other than Utility Installations or Trade Fixtures." "Trade Fixtures" means the tenants' "machinery and equipment which can be removed without doing material damage to the Premises."

### *The Roof Replacement and the October 2006 Rainstorm*

In August 2006, Namo hired Nordby Builders, Inc. (Nordby), a general contractor, to perform major renovation work at the property for a contract price of $1.1 million. The renovation work included removal and replacement of the roof on the building.

Nordby engaged a subcontractor to remove and dispose of the existing roof on the building. In early October 2006, the old roof over the building had been completely removed. A new roof had not yet been installed.

Upon learning of an advancing rainstorm, Nordby attempted to cover the exposed rafters on the rooftop with plastic tarps. The tarps failed to protect the interior of the building during a rainstorm on October 4 and 5, 2006. As a result, rainwater caused substantial damage to the interior of the premises, including the tenant improvements.

### *Applicable Insurance Coverage*

At the time of the rainstorm, Namo was insured by defendant and respondent Peerless Insurance Company (Peerless) under a standard commercial property owner's policy, which included both first-party property coverage and third-party general liability coverage (the Peerless policy). The tenants were insured under a commercial tenant's policy issued by Travelers Property Casualty Company of America (Travelers), which also included property and general liability coverage (the Travelers policy).

As required by a provision contained in the leases, Namo was an additional insured under the liability provisions of the Travelers policy. The additional insured endorsement applied "with respect to liability arising out of the ownership, maintenance or use of that part of any" leased premises.

### *Travelers Pays for Tenant Improvements*

Following the storm, Namo authorized the tenants to remove and demolish the tenant improvements. Namo refused to restore or replace the tenant improvements, contending the tenants were obligated to do so under the leases. In December 2006, at the tenants' expense, a contractor began removing the tenant improvements that had been damaged.

4

In January 2007, Travelers acknowledged that the Travelers policy covered the damages to the tenant improvements. Accordingly, Travelers paid to the tenants sums totaling $931,982, which was composed of $152,067 for damaged restaurant equipment and $779,915 for damaged "business personal property," including the cost of the tenant improvements.

In March 2007, Namo's attorneys advised the tenants that Namo had completed the restoration of the shell of the building and rejected the tenant's request to extend the 1997 lease for another five years. Namo insisted that the tenants vacate the property by June 30, 2007.

### Namo's Property Claims

Namo submitted a property claim to Peerless for lost rental income and building damage, among other things. Between October 2006 and April 2007, Peerless issued payments to Namo in response to this claim totaling $122,307.79.

On February 25, 2008, Namo submitted a supplemental property claim to Peerless seeking $454,726 to repair the tenant improvements. Namo informed Peerless that the tenants had breached the leases by failing to repair the damaged tenant improvements. Peerless denied this property claim in May 2008 on the ground Namo lacked an insurable interest in the tenant improvements at the time they were damaged in 2006.

### The Tenants' Action Against Namo

In June 2007, the tenants filed suit against Namo, Albion Equities, Inc. (Albion), and Malcolm Booth in Sonoma County Superior Court, alleging claims for breach of contract, bad faith, common counts, misrepresentation, negligent misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress, and unfair competition (the tenants' action).[2] Namo filed a cross-complaint against the tenants asserting breach of the leases and other affirmative claims for relief.

---

[2]Booth was the president of Albion, which managed Namo. Although Booth and Albion were parties to the proceedings below, they are not parties to this appeal. For the sake of simplicity, we limit our factual recitation to Namo's role in the proceedings except where necessary to clarify the role of Booth and Albion.

5

Namo tendered defense of the tenants' action to both Peerless and Travelers. On July 27, 2007, Peerless agreed to defend Namo in the tenants' action under a reservation of rights. On August 22, 2007, Travelers determined that it would provide a defense to Namo in the tenants' action under a full reservation of rights. In a follow-up letter dated December 7, 2007, Travelers revised its position and explained that it would provide a defense for all causes of action but would only indemnify Namo for bodily injury and property damage that occurred during its policy period. Travelers also clarified that it was no longer relying on the intentional acts exclusion as a basis for its reservation of rights. Travelers reserved the right to withdraw from the defense to the extent that any policy exclusions cited in the letter applied.

After Travelers agreed to defend Namo, Peerless withdrew its defense on the ground the Travelers policy provided primary coverage and that the coverage afforded by the Peerless policy was therefore excess. Travelers paid for the defense of Namo in the tenants' action until that action was dismissed in 2010.

### *Settlement of the Tenants' Action*

On February 18, 2010, the tenants, Namo, Peerless, and Travelers reached a settlement of the tenants' action at a JAMS mediation. As part of this settlement, the tenants accepted $500,000 to release their claims against Namo, Travelers, and Peerless. Of this sum, Travelers paid $375,000, Peerless paid $50,000, and Namo paid $75,000. Travelers separately agreed to pay Namo $75,000 on behalf of the tenants to settle Namo's cross-complaint against the tenants. Namo used the $75,000 received from Travelers to pay its share of the settlement owed to the tenants.

The terms of the settlement were included in a written "Stipulation for Settlement" signed by representatives of the parties. The stipulation includes a standard release in which the tenants agreed to release their claims against Namo and its insurers, Travelers and Peerless. In a separate stipulation for settlement regarding the $75,000 settlement of Namo's cross-complaint against the tenants, Namo released its claims against the tenants and their insurer, Travelers.

Namo, Travelers, and the tenants executed a formal settlement agreement in March 2010. Peerless was not a party to the March 2010 agreement. As set forth in the March 2010 agreement, Travelers assigned to Namo any claims, rights, or causes of action it may have against Peerless, including any rights of contribution, indemnity, or subrogation that relate to or arise from Traveler's defense and indemnity of Namo.

### *Namo's Suit Against Peerless*

On October 17, 2008, while the tenants' action was still pending, Namo, Booth, and Albion filed suit against Peerless in the Sonoma County Superior Court asserting causes of action for breach of contract, insurance bad faith, and declaratory relief.[3] The insurance coverage action filed by Namo is the subject of this appeal. In the second cause of action, Namo asserted that Peerless had breached the terms of the Peerless policy by denying its claim for damages to the tenant improvements.

In May 2010, Peerless and Namo filed cross-motions for summary adjudication of Namo's second cause of action for breach of contract involving the tenant improvements. The court granted Peerless's motion and denied Namo's motion. Among other things, the court reasoned that Namo did not have an insurable interest in the tenant improvements at the time of the loss. The court also noted that the Peerless policy provided excess coverage over every other insurance covering the loss, including the Travelers policy.

In July 2010, Namo filed a first amended complaint stating a new cause of action for contribution and indemnity in which Namo sought to recover the expenses Travelers paid to defend and indemnify Namo in the tenants' action. The cause of action was premised on Travelers' assignment to Namo of its claims for indemnity and contribution against Peerless. Namo alleged that although Peerless ultimately agreed to contribute $50,000 to the settlement of the tenants' action, Peerless should have contributed much more or paid the entire amount of the settlement in light of its role as primary insurer.

---

[3]Albion and Booth later dismissed their claims against Peerless. Accordingly, we shall limit our discussion to the claims asserted by Namo.

7

In November 2010, Namo filed a motion for summary adjudication of issues pertaining to its cause of action for indemnity and contribution. Peerless filed a cross-motion for summary judgment, or in the alternative, summary adjudication of the remaining causes of action in Namo's complaint.

In a tentative ruling, the trial court ruled against Namo and in favor of Peerless on the issues pertaining to the claim for contribution and indemnity. Among other things, the court reasoned that the parties released all of the claims against Peerless in the JAMS stipulation for settlement, including any contribution and indemnity rights Travelers may have had against Peerless. Consistent with its tentative ruling, the trial court granted Peerless's motion for summary judgment and denied Namo's cross-motion for summary adjudication. In a lengthy order, the court explained that it had reached its conclusion on essentially two grounds. First, the court concluded that Peerless owed no duty to pay Namo for the legal expenses Travelers paid to defend and indemnify Namo because, at the time of the loss in October 2006, the Peerless policy provided excess coverage to the Travelers policy, which the court determined provided primary coverage. Second, the court concluded that Namo could not assert any claim for equitable indemnity on behalf of Travelers because Travelers had released any such claim under the terms of the JAMS stipulation for settlement.

After the trial court entered judgment in favor of Peerless, Namo filed a timely notice of appeal.

## DISCUSSION

**1.** *Standard of Review*

Summary judgment must be granted when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) We apply de novo review to a trial court ruling on a motion for summary judgment. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.) We review the trial court's rulings and not its reasoning. (*Ibid.*) "Thus, a reviewing court may affirm a trial court's decision granting summary judgment for an erroneous reason."

8

(*Ibid.*; accord, *Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376.) These same principles apply to our review of an order granting or denying summary adjudication. (*RC Royal Development & Realty Corp. v. Standard Pacific Corp.* (2009) 177 Cal.App.4th 1410, 1416.)

## 2. *Governing Legal Principles*

"Our goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions. [Citations.] 'If contractual language is clear and explicit, it governs.' [Citations.] If the terms are ambiguous, we interpret them to protect ' "the objectively reasonable expectations of the insured." ' " (*Boghos v. Certain Underwiters at Lloyd's of London* (2005) 36 Cal.4th 495, 501.) A term is ambiguous when it is susceptible to two or more constructions, both of which are reasonable. (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 648.) A term is not ambiguous solely because it is not defined (*Ray v. Valley Forge Ins. Co.* (1999) 77 Cal.App.4th 1039, 1044), and a court will not adopt a strained interpretation to create ambiguity where none exists. (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 807.)

The insured bears the burden of proving that a claim is within the basic scope of coverage. (*MacKinnon v. Truck Ins. Exchange, supra,* 31 Cal.4th at p. 648.) The burden is on the insurer to establish that a claim is excluded. (*Ibid.*) Coverage clauses are interpreted broadly, whereas exclusionary clauses are interpreted narrowly against the insurer. (*Ibid.*) An exception to an exclusion is likewise construed broadly in favor of the insured. (*TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 27.)

An endorsement forms part of the insurance contract and must be construed together with the policy as a whole. (*Adams v. Explorer Ins. Co.* (2003) 107 Cal.App.4th 438, 450–451.) "If there is any conflict between an endorsement and the body of a policy, the endorsement controls, provided that any reduction in coverage reasonably expected under the body of a policy must be ' "conspicuous, plain and clear." ' " (*Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436, 1463.)

9

**3.**     *Property Damage to Tenant Improvements*

Namo argues that the trial court erred in granting summary adjudication to Peerless on its second cause of action concerning the tenant improvements. Namo contends the tenant improvements were insured under the Peerless policy because its "reversionary interest" in the tenant improvements qualified as an " 'insurable interest.' " As we explain, the trial court correctly granted summary adjudication in favor of Peerless on Namo's second cause of action, regardless of whether Namo had an insurable interest in the tenant improvements at the time they were damaged.

"No person may recover on a policy of insurance unless that person has an insurable interest in the property insured." (*California Food Service Corp. v. Great American Ins. Co.* (1982) 130 Cal.App.3d 892, 897.) "[A]n insurable interest exists when 'the insured has a direct pecuniary interest in the preservation of the property and . . . will suffer a pecuniary loss as an immediate and proximate result of this destruction . . . .' " (*Ibid.*; see Ins. Code, § 281.) An "inchoate interest" or an "expectancy" may comprise an insurable interest (Ins. Code, § 282), although a "mere contingent or expectant interest . . . not founded on an actual right to the thing" is not an insurable interest. (Ins. Code, § 283.)

Peerless contends that Namo had no insurable interest in the tenant improvements at the time they were damaged because its interest was at most a mere contingent or expectant interest. According to Peerless, the provisions of the leases imposed no financial risk on Namo for damages to the tenant improvements before the expiration or termination of the lease. For its part, Namo relies on the principle that "[a] lessor has an insurable interest in any permanent improvements, fixtures, and repairs made by his or her lessee, including any building erected on the leased land by his or her tenant, at least, where this building is to become the property of the lessor upon termination of the lease." (3 Plitt et al., Couch on Insurance 3d (2011 rev. ed.) § 42:60, p. 42–101, fns. omitted.) As set forth in the leases, the tenant improvements become Namo's property at the termination or expiration of the leases. Namo contends its "reversionary interest" in the tenant improvements constitutes an insurable interest distinct from any insurable interest

10

the tenants may have had in the same property. (See *Alexander v. Security-First Nat. Bank* (1936) 7 Cal.2d 718, 723 [lessor and lessee may have separate insurable interests in same property]; *Long v. Keller* (1980) 104 Cal.App.3d 312, 316 [lessor and lessee had separate and distinct insurable interest in improvements on leased property regardless of who made them].)

It is unnecessary to resolve whether Namo had an insurable interest at the time of loss because the property damage to the tenant improvements was covered under the Travelers policy, which fully compensated the tenants for their loss. Several provisions of the Peerless policy bear upon our analysis. First, section 2.k of the Peerless policy provides that "Covered Property" does not include "[p]roperty that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance." In addition, an "Other Insurance" exclusion included as section G.2 in the "Commercial Property Conditions" provides in relevant part that "[i]f there is other insurance covering the same loss or damage, . . . , we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not."

These provisions constitute "other insurance" clauses that seek to limit the insurer's liability when other insurance covers the same risk or loss. (*Burns v. California FAIR Plan Assn.* (2007) 152 Cal.App.4th 646, 657.) They fall into a category of other insurance clauses referred to as "excess only," which requires the exhaustion of other applicable insurance. (*Id.* at pp. 657–658.) In effect, the insurer does not provide primary coverage but instead acts only as an excess insurer. (*Ibid.*)

Here, it is undisputed that Travelers not only provided coverage for the loss of the tenant improvements but also paid the tenants for that loss. Consequently, Peerless was an excess insurer as to the tenant improvements. Namo has not identified any covered loss or damage associated with the tenant improvements in excess of the amount received by the tenants. As a result, Peerless's excess coverage was not triggered and Namo has

11

no claim for breach of contract premised on Peerless's denial of the claim for the loss of the tenant improvements.

Namo contends the other insurance clauses in the Peerless policy do not apply because their purpose is to address the situation where the insured has coverage for the same property under multiple policies. According to Namo, other insurance clauses do not apply to the situation where different insureds have coverage for the same property or loss. We disagree. " ' " [O]ther insurance clauses" were designed to *prevent multiple recoveries* when more than one policy provided coverage for a given loss. ' " (*Burns v. California FAIR Plan Assn., supra,* 152 Cal.App.4th at p. 657.) " 'This is true even where the policies cover different *insureds.* The fact they cover the *same risk* makes the insurers "co-insurers" as to that risk.' " (*Ibid.*) Paying different insureds for the same loss "runs afoul of the well established rule of law that insurance proceeds are to indemnify, not to generate a profit. If [different insureds] could each recover the value of the destroyed property, the insurance payout would be more than the amount of the loss," in violation of the principle that the payout cannot exceed the interest that is insured. (*Id.* at p. 656.)

Further, the language of the relevant provisions does not limit their application to situations in which the same insured has multiple policies covering the same risk. Rather, the provisions refer generally to "property" covered "under any other policy" or other insurance covering the "same loss or damage," without regard to the identity of the insured. Indeed, the provisions expressly state that they apply regardless of whether the insured can collect on any other applicable insurance.

Namo also argues that other insurance clauses do not apply when the interests insured are separate and distinct, such as in the case of a lessor and a lessee. Namo relies on *Ohio Cas. Ins. Co. v. Harbor Ins. Co.* (1968) 259 Cal.App.2d 207, 213, in which the court stated that "excess and prorata 'other insurance' clauses do not operate between separate insurers of mortgagor and mortgagee since the respective policies cover different insurable interests in the same property." Our conclusion does not violate that principle. A mortgagee's insurable interest is limited to the amount of the debt and is distinct from

12

the mortgagor's insurable interest. (Cf. *Washington Mutual Bank v. Jacoby* (2009) 180 Cal.App.4th 639, 646.) While a lessor and lessee *may* have a different insurable interest in the same property depending on the facts of the case, that is not the case here. Namo seeks to be indemnified for the same loss that was covered by the Travelers policy. It has failed to explain how its interest is different in any respect from the tenants' interest. Consequently, the application of the other insurance clause in this instance does not deny Namo indemnification for some unique interest it possesses in the tenant improvements.

Namo further argues that the other insurance clause applies only if the tenant improvements are "more specifically described" in other applicable coverage, and it points out that the Travelers policy contains the same coverage language as the Peerless policy. Namo neglects to note that the other applicable other insurance clause, in section G.2 of the "Commercial Property Conditions," contains no requirement that the covered property be "more specifically described" in other applicable insurance. Consequently, it is immaterial that the covered property is not more specifically described in the Travelers policy.

Accordingly, even assuming that Namo had an insurable interest in the tenant improvements, the application of the other insurance clauses in the Peerless policy precludes coverage for Namo's property claim for property damage to the tenant improvements. Because the loss was fully covered under the Travelers policy, Peerless has no obligation to indemnify Namo in whole or in part for the same loss. Consequently, the trial court did not err in granting summary adjudication to Peerless on Namo's second cause of action for breach of contract.[4]

### 4.    *The JAMS Releases*

In February 2010, Namo, the tenants, and their insurers, Peerless and Travelers, reached a settlement of the tenants' action at a JAMS mediation. Following the mediation, the parties to the settlement signed a JAMS stipulation for settlement that

---

[4]Namo is not left without a remedy to seek recompense for the damaged tenant improvements. Indeed, Namo pursued that remedy—a contract action against the tenants for failing to repair or replace the tenant improvements pursuant to the leases.

included standard releases. Peerless describes the settlement as a global settlement and contends the releases contained in the JAMS stipulation for settlement released and discharged any claims the settling parties had arising out of the tenants' action, including any claims for contribution or indemnity against any of the other settling parties. As a consequence, Peerless argues that Travelers released any causes of action it may have had against Peerless for equitable contribution or indemnity. It claims it is entitled to summary judgment on Namo's remaining causes of action because Namo has no cognizable claim to assert against Peerless as an assignee of Travelers. The effect of the JAMS releases was one of the grounds on which the trial court granted summary judgment in favor of Peerless.

Peerless's reliance on the JAMS releases is unavailing. As an initial matter, Peerless failed to raise the JAMS releases as a ground for summary judgment in its notice of motion. Instead, the issue was first raised in papers opposing Namo's cross-motion for summary adjudication. It is well settled that a court may only consider a ground supporting summary judgment or adjudication if it is specified in the notice of motion. (*Gonzales v. Superior Court* (1987) 189 Cal.App.3d 1542, 1545; *Homestead Savings v. Superior Court* (1986) 179 Cal.App.3d 494, 498–499.) Citing *Miracle Auto Center v. Superior Court* (1998) 68 Cal.App.4th 818, 823, Peerless contends that a party opposing summary judgment may be entitled to judgment in its favor if it filed a cross-motion for summary judgment. However, the authority Peerless cites merely states that a party opposing summary judgment is not entitled to judgment in its favor unless it filed a cross-motion for summary judgment; it does not suggest that a party can dispense with adequate notice of the grounds on which summary judgment or adjudication is sought. When a ground supporting summary judgment is first raised in papers opposing a cross-motion, the other party is deprived of the opportunity to file a separate statement responding to any additional material facts supporting that ground. (See *Sierra Craft, Inc. v. Magnum Enterprises, Inc.* (1998) 64 Cal.App.4th 1252, 1255; see also Code Civ. Proc., § 437c, subd. (b)(3) [opposition papers include separate statement responding to moving party's material facts].) Consequently, because Peerless did not raise the JAMS

releases as a ground for summary judgment in its notice of motion, the releases may not serve as the basis for granting summary judgment in its favor.

Even if Peerless had properly raised the issue, we would still conclude that it is not entitled to judgment as a matter of law on the basis of the JAMS releases. The JAMS stipulation for settlement of the tenants' action provided for a payment of $500,000 to the tenants "in full settlement and compromise of this action and in release and discharge of any and all claims and causes of action made in this action, and in release and discharge of any and all claims and causes of action arising out of the events or incidents referred to in the pleadings in this action." The release is not a *mutual* release of all potential claims among the parties to the settlement. The scope of the release is clarified in the succeeding paragraph of the stipulation for settlement, which specifies that the plaintiffs—i.e., the tenants—agreed to accept the sums offered by the settling parties in exchange for releasing all pending and potential claims against the defendants arising out of the tenants' action. Further, in the settlement of the tenants' action against Namo, the tenants were the only parties to the agreement that waived the provisions of Civil Code section 1542 and released any claims, known or unknown, arising out of the tenants' action. In a separate stipulation for settlement resolving Namo's cross-complaint against the tenants, Namo agreed to release any claims it had or may have against the tenants and their insurer, Travelers, arising out of the tenants' action. Nowhere in any of the JAMS releases did Namo or Travelers purport to release any claims they may have had against Peerless, including any claims for contribution or indemnity. The plain terms of the stipulation for settlement does not support Peerless's contention that the JAMS releases encompassed all claims the settling parties had against all other settling parties.

Peerless relies on the principle that multiparty settlements are presumed to be global—a complete resolution of all claims—unless claims or rights of indemnification or contribution are expressly reserved by agreement. (See *Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 891 (*Skulnick*).) However, Peerless has cited no authority in which this principle has been extended to *insurers* that contribute to settlements. In *Skulnick*, the primary case on which Peerless relies, the court addressed whether *joint*

15

*tortfeasors* participating in a settlement waived rights to contribution or indemnity unless those rights are expressly reserved. (See *id.* at pp. 887, 891.)

As explained in *Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1293, fn. 3, insurance carriers "are neither joint torfeasors nor 'co-obligors'; their obligations arise strictly out of separate contracts with their insureds." It is for this reason that Code of Civil Procedure section 877, which discharges any liability a joint tortfeasor or co-obligor who settles in good faith may have for contribution to other jointly liable parties, does not limit an insurance carrier's right to seek equitable contribution from another insurer. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra,* at p. 1293, fn. 3.) Likewise, "[w]here one or more insurers have contributed to a settlement of third party claims against the insured, that settlement does *no*t affect the settling insurer's right to seek equitable contribution from the others." (2 Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2013) ¶ 8:67.17, p. 8-33.) Thus, an insurer does not necessarily waive its rights of indemnification and contribution by contributing to a multiparty settlement on behalf of its insured in which it does not expressly reserve those rights.[5]

We conclude that Peerless is not entitled to summary judgment on the basis of the JAMS releases. The trial court erred in concluding otherwise. The releases do not purport to encompass any claims that Namo or Travelers had or may have against Peerless. Further, the authority relied upon by Peerless for the proposition that multiparty settlements are presumed to resolve all claims among the settling parties is inapplicable to insurers that contribute to multiparty settlements.

---

[5]Peerless states that insurers customarily reserve claims against each other when contributing to a settlement. The authority relied upon for this proposition, *Hartford Casualty Ins. Co. v. Travelers Indemnity Co.* (2003) 110 Cal.App.4th 710, 713, simply recites the fact that the insurers in that case expressly reserved their contribution rights in connection with a settlement on behalf of the insured. The case does not stand for legal proposition that the insurers would have waived their contribution rights in the absence of such an express reservation of rights.

**5.**     *Equitable Indemnity*

In the fourth cause of action in the operative complaint, Namo asserts a claim for contribution and indemnity against Peerless. The basis for the claim is the assignment by Travelers to Namo of its contribution and indemnity rights against Peerless. Namo contends that Peerless, as the primary insurer concerning the claims alleged by the tenants in the tenants' action, is liable to Namo as the assignee of Travelers, which paid $375,000 to settle the tenants' claims against Namo. Namo seeks not only the money paid by Travelers to settle the tenants' action but also the attorney fees and other defense costs incurred by Travelers. As this action has progressed, Namo has clarified that it seeks equitable indemnity and not equitable contribution from Peerless. "Equitable indemnity ' "applies in cases in which one party pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter party." ' " (*United Services Automobile Assn. v. Alaska Ins. Co.* (2001) 94 Cal.App.4th 638, 644–645.)

Namo sought summary adjudication on the issue of whether Travelers owed a duty to defend and indemnify Namo in the tenants' action. This issue is at the crux of Namo's equitable indemnity claim. If Travelers owed a duty to defend and indemnify Namo, then Travelers had no right to equitable indemnity from Peerless, which both parties agree provided excess insurance over the Travelers policy to the extent the Travelers policy afforded coverage to Namo.[6] Namo further sought summary adjudication of whether Peerless had a duty to defend Namo in the tenants' action, whether Peerless had a duty to equitably indemnify Travelers for the monies paid to settle the tenants' action, and whether Peerless had a duty to equitably indemnify Travelers for attorney fees and other costs incurred in defending Namo in the tenants' action. In its cross-motion for summary

---

[6]The Peerless policy provides, in relevant part, that it is excess over "[a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment or endorsement." The Peerless policy further provides that Peerless has no duty to defend its insured, Namo, when it is excess over other available primary insurance that is "valid and collectible."

17

judgment, Peerless contended it was entitled to judgment as a matter of law on the equitable indemnity claim, arguing that its coverage was excess because Travelers owed a duty to defend and indemnify Namo as an additional insured under the Travelers policy. In granting summary judgment in favor of Peerless, the trial court concluded that Travelers had a duty to defend and indemnify Namo.

As we explain below, the undisputed material facts support a conclusion that Travelers had no duty to defend or indemnify Namo, its additional insured under the Travelers policy. However, because there is a triable issue of fact regarding whether Travelers (and its assignee, Namo) is equitably estopped from asserting an equitable indemnity claim against Peerless, Namo is not entitled to summary adjudication on the issue of whether Peerless owes a duty to equitably indemnify Travelers.

### a. The Scope of Coverage for Additional Insureds

At the outset, we observe that Namo was an additional insured under the Travelers policy. The "Xtend Endorsement" to the Travelers policy provides in relevant part that "WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as 'additional insured') with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, *but only with respect to liability arising out of the ownership, maintenance or use of that part of any premises leased to you . . . .*" (Italics added.)

As a general matter, "[o]ne of the primary functions of an additional insured endorsement in the landlord-tenant context is to protect the landlord from vicarious liability for acts of its tenant on the leased premises." (*Liberty Mut. Ins. Co. v. Michigan Mut. Ins. Co.* (Ind. App. 2008) 891 N.E.2d 99, 104.) The endorsement is meant to provide " 'specialized protection rather than all-encompassing coverage.' " (*Ibid.*) "[C]overage for an additional insured is typically limited to liability arising out of the named insured's work or operations. Thus, additional insured status does not provide coverage to an additional insured for the additional insured's own work or operations." (3 Plitt et al., Couch on Insurance 3d, *supra,* § 40:26, pp. 40-42, 40-43.)

18

Moreover, the naming of additional insureds does not extend the substantive coverage of the policy but simply gives the additional insured the same, but no greater protection, than that afforded to the named insured. (*Liberty Mut. Ins. Co. v. Travelers Indem. Co.* (D.C. Cir. 1996) 78 F.3d 639, 642.) An additional insured cannot demand coverage for harm that would be excluded if the named insured sought coverage for the same claim. (See *Scottsdale Ins. Co. v. Somerville Fidelco Associates, LP* (D.N.J. Feb. 22, 2010, No. 07-2763) 2010 U.S. Dist. Lexis 15258, at p.*23.)

We address the purpose and general scope of the additional insured endorsement simply to put the situation here in context. In this case, Namo sought coverage as an additional insured from the tenants' insurer, Travelers, for claims asserted by the tenants against it. Those claims were not based on the tenants' negligence but were instead premised on alleged wrongdoing by the additional insured, Namo. In short, Travelers provided a defense and indemnity to an additional insured that was suing its own named insured, the tenants, for claims based on the additional insured's wrongdoing. It goes without saying that this result is at odds with the general scope and purpose of coverage afforded to additional insureds.

The federal district court in *Scottsdale Ins. Co. v. Somerville Fidelco Associates, LP, supra,* 2010 U.S. Dist. Lexis 15258 faced a very similar factual situation. There, a landlord contracted to replace a roof on a commercial building it leased. (*Id.* at p. *2.) A tenant incurred cleanup and other costs associated with the roof replacement. The tenant filed an arbitration demand against the landlord seeking to recover the costs it had incurred. (*Id.* at pp.*3–*4.) After the landlord settled the claim, it sought coverage from the tenant's insurer as an additional insured under that policy. (*Id.* at pp. *5, *19.) In rejecting the landlord's claim, the court made an observation that is particularly apt here: "[Commercial general liability] policies cover insureds for their tort liability to third parties. [Citations.] The record indicates that no third parties suffered harm; rather, [the tenant], the insured under the [policy], suffered harm as a result of [the landlord's] failure to maintain the roof of the facility. Thus it is unclear why [the tenant's] liability policy would be implicated at all with respect to the harm [the tenant] suffered. [The landlord]

19

has not provided the court with an explanation as to why an insurance policy geared toward third party injuries could be asserted by the owner of the property with regards to injuries suffered by the insured itself." (*Id.* at pp. *19–*20.)

We do not suggest these general observations control the outcome of this case. Ultimately, the determination of whether Travelers had a duty to defend or indemnify Namo turns on the language of the Travelers policy. (See *Modern Development Co. v. Navigators Ins. Co.* (2003) 111 Cal.App.4th 932, 939.) Nevertheless, we hesitate to lose the forest for the trees by focusing on isolated language in the Travelers policy without considering the overall context.

With this in mind, we proceed to consider whether the Travelers policy afforded coverage to Namo for claims asserted in the tenants' action. The Travelers policy provide two basic coverages: Coverage A provides coverage for "property damage" and "bodily injury," whereas Coverage B provides coverage for "personal and advertising injury." As explained below, the tenants' action did not assert any covered claims for property damage, bodily injury, or personal and advertising injury.

### b. Property Damage

In the tenants' action, the tenants sued Namo for damage to their property that was sustained in the rainstorm. This damage is excluded from coverage under exclusion j(1) of the Travelers policy, which provides that the insurance does not apply to "[p]roperty damage" to "(1) Property *you* own, rent, or occupy . . . ." (Italics added.) The terms "you" and "your" are defined in the Travelers policy with reference to the named insured. The tenants are the named insureds. Further, the additional insured endorsement does not transform Namo into a named insured. (See 3 Plitt et al., Couch on Insurance 3d, *supra,* § 40:27, p. 40-43 [" 'you' and 'your' do not encompass individuals or entities added as an additional insured"].) Consequently, exclusion j(1) of the Travelers policy excludes coverage for any property damage suffered by the tenants.

Peerless does not dispute the applicability of exclusion j(1) but instead argues that the "premises exception" to the exclusion contained in the Xtend Endorsement provides coverage for property damage caused by water. The premises exception ("DAMAGE TO

PREMISES RENTED TO YOU EXTENSION") provides in relevant part that "[e]xclusions c. through n. do not apply to *damage to premises while rented to you, or temporarily occupied by you with permission of the owner*, caused by: [¶] a. Fire; [¶] b. Explosion; [¶] c. Lightning; [¶] d. Smoke resulting from such fire, explosion, or lightning; or [¶] e. *Water*." (Italics added.) Here, because the damage was caused by water, Peerless contends the exclusion j(1), the "own property" exception, is inapplicable. We disagree.

The premises extension does not provide a general exception for any property damage caused by water. Rather, it provides an exception for *property damage to leased premises* caused by water. As pointed out by Namo, the premises extension removes a gap that would otherwise leave a tenant uninsured for damage to the landlord's property. In the case of a commercial tenant, the "own property" exclusion would preclude coverage when a fire started by the tenant caused damage to the landlord's property— which is rented to the tenant—and the landlord sues the tenant for that damage. The premises extension exception removes that gap in coverage by making exclusion j(1) inapplicable when the landlord sues the tenant for damage to the landlord's property caused by fire, water, or other enumerated causes.

By its plain terms, the exception for water damage does not apply to the insured's own property. Here, the tenants claimed property damage to their own property and not the leased premises. Indeed, the tenants would have no standing to assert a claim for damage to the landlord's property. Consequently, the tenants' action does not give rise to covered property damage under the Travelers policy.

### c. Bodily Injury

The tenants alleged in the tenants' action that they suffered "emotional distress" as a result of Namo's "outrageous" conduct, and that one tenant "suffered physical manifestation of bodily injury" as a result. The tenants alleged that it was the loss of their long-time businesses that caused them "serious emotional distress." The tenants further alleged they lost their leasehold and business operations as a result of Namo's wrongful conduct in requiring them to vacate the premises and in rejecting their lease extension.

21

It is well settled that there is no coverage for "emotional distress damages flowing derivatively or directly from *noncovered* events . . . ." (2 Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra,* ¶ 7:123, p. 7A-51.) In *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 20, the Court of Appeal reasoned there was no duty to defend the insured for emotional distress claims because the gravamen of the complaint was economic loss and the "damages for emotional and physical distress were derivative of and inseparable from [the plaintiffs'] allegations of intentional and business torts, allegations that could not, by themselves, give rise to coverage under a [commercial general liability] policy." (*Id.* at p. 20.) The Supreme Court affirmed, holding that commercial general liability policies "were never intended to cover emotional distress damages that flow from an uncovered 'occurrence' . . . ." (*Id.* at p. 23.)

Here, the gravamen of the tenants' action was for intentional and business torts. The emotional distress they allegedly suffered resulted from the loss of their long-time businesses, an economic loss. Further, to the extent the tenants suffered property damage to their own property as a result of the rainstorm that contributed to their emotional distress, that property damage was not covered for reasons we have explained. Consequently, any emotional distress the tenants are alleged to have suffered did not flow from a covered occurrence.

Peerless focuses on the language of the Xtend Endorsement, which expands coverage by defining "bodily injury" to include "mental anguish, mental injury, shock, fright, disability, humiliation, sickness or disease resulting from any of these at any time." While the Xtend Endorsement undeniably expands the scope of bodily injury coverage, the broader definition does not alter the basic rule that emotional distress is only covered if it is caused by an otherwise covered occurrence. Even under policies that contain a broader definition of bodily injury, "emotional distress is recoverable only when *caused by an 'occurrence'* that is covered under the policy. Emotional distress resulting from *uncovered* events (e.g., financial losses on investments) cannot be recovered . . . ." (2 Croskey et al.*,* Cal. Practice Guide: Insurance Litigation*, supra,* ¶ 7:123.5, p. 7A-52.)

Accordingly, despite the more expansive definition of "bodily injury" contained in the Xtend Endorsement, our conclusion remains the same. Because any claimed mental anguish resulted from business torts and economic loss suffered by the tenants, the emotional distress alleged by the tenants is not covered by the Travelers policy.

### d. Personal and Advertising Injury

"Personal and advertising injury" is defined in the Travelers policy to include "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor . . . ." In the tenants' action, the tenants alleged that Namo and its agents entered and used the leased premises without the tenants' authorization or consent following the rainstorm. Peerless contends the trespass claim gives rise to a potentially covered claim under the Travelers policy. We disagree.

The Travelers policy provides that "[t]his insurance applies to 'personal and advertising injury' caused by an offense *arising out of your business* but only if the offense was committed in the 'coverage territory' during the policy period." (Italics added.) As discussed above, the terms "you" and "your" are limited to the named insureds and do not include additional insureds. Consequently, the Travelers' policy only applies to personal and advertising injury arising out of the *tenants'* business operations. Namo, as an additional insured, was not covered for personal and advertising injury arising out of its own business operations. (See 3 Plitt et al., Couch on Insurance 3d, *supra,* § 40:26, pp. 40-42–40-43 [additional insured status does not extend coverage to the additional insured's *own* work or operations].)

Any alleged wrongful eviction or wrongful entry into the leased premises arose from Namo's business operations as a landlord. To the extent that Peerless contends the wrongful eviction arose out of the tenants' business operations, it is mistaken. Simply because the tenants were operating a business within the leased premises when they were wrongfully evicted does not mean that the wrongful eviction arose from the tenants' business. The phrase "arising out of" is defined as" 'to originate from a specified source.' " (*Hartford Casualty Ins. Co. v. Travelers Indemnity Co., supra,*

23

110 Cal.App.4th at p. 720, fn. 4.) Here, Namo, in its role as landlord, was the specific source of the alleged wrongful eviction. It strains reason to suggest that the specific source of the purported wrongful eviction was the tenants' operation of their business.

We conclude there were no potentially covered claims for personal and advertising injury asserted in the tenants' action. Although a liability insurer owes a broad duty to defend its insured, no such duty arises if the claims against the insured do not create a potential for indemnity. (See *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295.) Further, if there is no duty to defend there is likewise no duty to indemnify the insured. (*Ibid.* [duty to defend is broader than duty to indemnify].) Accordingly, Travelers owed no duty to defend or indemnify Namo against the claims asserted in the tenants' action. As the assignee of Travelers, Namo was entitled to summary adjudication of that issue in its favor.

For reasons we next explain, Namo is not entitled to summary adjudication on the issues of whether Peerless was required to equitably indemnify Travelers for the monies paid to settle the tenants' action or for the attorney fees and other costs incurred in defending Namo in the tenants' action.

### e.    Equitable Estoppel

Peerless argues that Namo is equitably estopped from asserting an equitable indemnity claim on behalf of Travelers. Peerless contends it was led to believe that Travelers would not pursue any claims for equitable indemnity in exchange for Peerless's $50,000 contribution to a global settlement of the tenants' action.

In order to establish equitable estoppel, a party must satisfy four elements: "(1) The party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Skulnick, supra,* 2 Cal.App.4th at p. 890.)

In *Skulnick,* the court concluded that settling parties were equitably estopped from asserting indemnification rights that they failed to expressly reserve. (*Skulnick, supra,*

24

2 Cal.App.4th at pp. 890–891.)  There, two defendants participated in settlement conferences and led other settling parties to believe that they were waiving their rights to seek indemnification.  (*Ibid.*)  The settlement did not mention indemnification rights and the parties did not raise the issue during the settlement conferences.  (*Id.* at pp. 887–888.)  It was only after the terms of the settlement were placed on the record that the defendants expressed their intention to preserve their indemnification rights.  (*Id.* at p. 888.)  The Court of Appeal concluded the defendants had waived their indemnification rights by remaining silent until after a global settlement was reached, particularly because one of the settling defendants declared that his participation in the settlement was contingent upon a release of all claims against him.  (*Id.* at pp. 890–891.)

In this case, Peerless set forth a course of conduct by Travelers that it claims led it to believe that Travelers did not intend to pursue a claim for equitable indemnity.  According to Peerless, a unit manager for Travelers told a Peerless claims analyst that the tenants' action could be resolved if Peerless contributed to the settlement of the tenants' claims against Namo.  Based on this conversation, the Peerless claims analyst understood that Travelers would not seek indemnity from Peerless if it contributed to the settlement of the tenants' claims against Namo, and the analyst further understood that any contribution by Peerless would be part of a global settlement of all claims among the parties, including Travelers and Peerless.

In a further conversation with Travelers, a claims analyst for Peerless mentioned that Peerless agreed to contribute $50,000 toward the settlement of the tenants' action against Namo to settle all claims relating to that case.  Travelers did not reject this contribution or suggest that it intended to reserve any right to seek indemnity from Peerless.  The claims analyst would not have agreed to contribute this sum had he been advised otherwise.

On several occasions, Travelers stated in writing that it intended to reserve its right to settle on behalf of Namo and seek *contribution* from Peerless.  By "contribution," Peerless understood that Travelers meant only contribution to the settlement of the tenants' action.  Travelers did not expressly reserve a right to seek equitable indemnity.

25

According to Peerless, it was only after the parties had reached a "global settlement" that Travelers assigned its indemnity and contribution rights to Namo. As noted above, the stipulation for settlement did not expressly reserve rights to seek indemnification or contribution.

Peerless contends that this course of conduct by Travelers was intended to induce Peerless to believe that a global settlement would fully resolve all claims among the parties. Peerless argues that Travelers had a duty to affirm its indemnification rights upon accepting the $50,000 settlement contribution by Peerless and executing the stipulation for settlement.

For its part, Namo contends that Travelers made clear in writing that it reserved its rights. However, Travelers merely reserved its right to seek contribution, a term that Peerless interpreted to mean a contribution to a global settlement. Travelers did not expressly reserve its right to seek equitable indemnity. Further, Namo cites statements made by the mediator at the mediation in support of its claim that Peerless was not misled as to Travelers's intention to pursue or assign its rights to indemnity and contribution. We may not consider these statements because they fall within the mediation privilege and are inadmissible as a matter of law. (See Evid. Code, §§ 1118–1124.)

Under the circumstances, we conclude that Peerless has raised a triable issue of material fact as to whether Travelers and its assignee, Namo, are equitably estopped from asserting equitable indemnity claims against Peerless. The available evidence raises conflicting inferences about whether and to what extent Peerless was led to believe that Travelers agreed to waive its right to indemnity as part of the settlement of the tenants' action.

Consequently, Namo is not entitled to summary adjudication on the issue of whether Travelers has a right to equitable indemnity from Peerless for sums paid to settle and defend the tenants' action.

26

**DISPOSITION**

The order granting summary adjudication in favor of Peerless on Namo's second cause of action for breach of contract is affirmed.  In all other respects, the judgment is reversed.  On remand, the trial court shall enter a new and different order granting summary adjudication in favor of Namo to the effect that Travelers owed no duty to defend or indemnify Namo against the claims asserted in the tenants' action.  The trial court shall otherwise deny Namo's summary adjudication motion and Peerless's cross-motion for summary judgment.  The matter is remanded to the trial court for further proceedings consistent with this opinion.  Each party shall bear its own costs on appeal.

_____
McGuiness, P.J.

We concur:

_____
Pollak, J.

_____
Jenkins, J.